1                    UNITED STATES DISTRICT COURT
                     EASTERN DISTRICT OF NEW YORK
2                              BROOKLYN

3    UNITED STATES OF AMERICA,      .  Docket No.
                                    .  1:21-MJ-00901-RER-1
4         Plaintiff,                .
                                    .  Brooklyn, New York
5              v.                   .  Wednesday, August 4, 2021
                                    .
6    OCTAVIAN OCASIO,               .
                                    .
7         Defendant.                .
     . . . . . . . . . . . . . . .  .
8    .

9                              VOLUME I
                     TRANSCRIPT OF ARRAIGNMENT
10           BEFORE THE HONORABLE RAMON E. REYES
                  UNITED STATES MAGISTRATE JUDGE
11
     APPEARANCES:
12
     For the Plaintiff:          US Attorney's Office EDNY
13                               By:  BENJAMIN L. WEINTRAUB, AUSA
                                 271-A Cadman Plaza East
14                               Brooklyn, New York  11201

15   For the Defendant:          Federal Defenders of NY
                                 By:  KANNAN SUNDARAM
16                               One Pierrepont Plaza
                                 16th Floor
17                               Brooklyn, New York  11201

18

19   Transcription Service:      Opti-Script, Inc.
                                 P.O. Box 77
20                               Winfield, PA 17889
                                 800-494-7500
21
     Proceedings recorded by electronic sound recording; transcript
22   produced by transcription service.

23

24

25

1              BROOKLYN, NEW YORK, WEDNESDAY, AUGUST 4, 2021:

2         (Call to Order of the Court.)

3              THE CLERK:  On the record.  This is 21-mj-901, USA

4    versus Octavian Ocasio.  We're on for an arraignment.

5              Counsel, please state your appearances starting with

6    the Government.

7              UNIDENTIFIED SPEAKER:  Say it again.  Hello.

8              THE COURT:  If that's Jose Reyes (ph.), this is

9    Magistrate Judge Reyes.  Please mute your phone.  We'll get to

10   you in a moment.  We need to start the proceeding, okay?

11             UNIDENTIFIED SPEAKER:  Okay.

12             MR. WEINTRAUB:  Benjamin Weintraub for the United

13   States, Your Honor.

14             MR. SUNDARAM:  Kannan Sundaram, Federal Defenders for

15   Mr. Ocasio.  Good afternoon -- evening.

16             THE COURT:  Good afternoon.  This is Magistrate Judge

17   Reyes.  All those who have phoned in to this proceeding, I

18   request that you mute your phones.  And if I need to speak with

19   anyone individually, we will ask you to unmute at that point.

20             Is Special Agent Ashton Buckner (ph.) on the line?

21             MR. ALBANO:  Judge, this is his partner, NYPD

22   Detective Albano (ph.).

23             THE COURT:  He's not around?

24             MR. ALBANO:  I will get him.

25             THE COURT:  Okay.  Because I need him to -- to swear

1  him in on the removal.

2          MR. ALBANO:  Okay, Your Honor.  I'll grab him.

3          UNIDENTIFIED SPEAKER:  Hello.

4          THE CLERK:  If you're calling in, please mute your

5  phone until the judge speaks to you and tells you to unmute.

6          UNIDENTIFIED SPEAKER:  All right.  Thank you, sir.

7          THE CLERK:  Thank you.

8          THE COURT:  While we're waiting for the agent, did

9  Mr. Ocasio sign a identity theft waiver?

10          MR. SUNDARAM:  Your Honor, when I interviewed Mr.

11  Ocasio at the courthouse I had not yet received the waiver

12  form, but I went through all of his rights with respect to

13  identity hearing and confirmed that he does not contest that

14  he's the person who's the subject of the indictment and that he

15  would be willing to waive an identity hearing.

16          I then contacted your chambers and I have sent a

17  form, an identity waiver form signed by me.  I've sent two

18  copies, one signed by me and one with my signature on behalf of

19  Mr. Ocasio.  The other one, I left his signature blank in case

20  the Court would prefer to sign for him with his consent.  And I

21  checked with chambers and they said that that would be

22  acceptable, which is why I am in my office doing the

23  arrangement from here.

24          THE COURT:  Okay.  Lewis, do we have that?

25          THE CLERK:  I'm forwarding it to you now, Judge.

1          THE COURT:  Great.  Thank you.

2          UNIDENTIFIED SPEAKER:  The agent's here, Judge.

3          THE COURT:  Right.

4          ASHTON BUCKNER, PLAINTIFF'S WITNESS, SWORN

5          THE COURT:  Great.  Mr. Ocasio, the purpose of this

6     proceeding is to make sure that you are aware and understand

7     the charges that are pending against you; to make sure that you

8     know your rights as a defendant in a criminal case; to discuss

9     the removal process with you; and to address the question of

10    whether you should be removed in custody or granted bail.

11         Before we get into all of that, Mr. Sundaram, does

12    Mr. Ocasio have any objection to proceeding by video?

13         MR. SUNDARAM:  No.  He does not.

14         THE COURT:  Okay.  So Mr. Ocasio, you have the right

15    to remain silent.  You do not have to make a statement to

16    anyone.  If you start to make a statement, you can stop at any

17    time.  If you have made statements in the past, you are not

18    required to make statements in the future.  Any statements that

19    you do make can and will be used against you in your case

20    except for statements that you make to your attorney.  Those

21    are privileged.  Do you understand, sir?

22         THE DEFENDANT:  Yes, Your Honor.  Thank you.

23         THE COURT:  You also have the right to be represented

24    by an attorney throughout your case, and if you can't afford an

25    attorney, the court will appoint one to represent you.

1    In connection with that, I've been given a financial

2    affidavit that includes some financial information about you,

3    your monthly income of 2,500, the fact that you have a bank

4    account with approximately 6,000 in it.  You have a car and

5    some other property, but you also have expenses.

6    Based on the information contained in this financial

7    affidavit, I find that Mr. Ocasio is entitled to

8    court-appointed counsel and I'll appoint Mr. Sundaram and the

9    Federal Defenders of New York to represent him.

10    Mr. Ocasio, and indictment has been issued against

11    you and others out of the Southern District of Texas charging

12    you with wire fraud and conspiracy to commit wire fraud.  Have

13    you seen this?

14    THE DEFENDANT:  Yes.  I have, Your Honor.

15    THE COURT:  And you briefly discussed the charges

16    with Mr. Sundaram?

17    THE DEFENDANT:  Yes.

18    THE COURT:  Do you understand the charges?

19    THE DEFENDANT:  Yes.  I do.  Yes.  I do.

20    THE COURT:  Mr. Sundaram explained a little while ago

21    that he also discussed with you the concept or the fact that

22    you could have in this district an identity hearing, which is a

23    hearing to determine whether you are the Octavian Ocasio that's

24    in the indictment and that you have decided to waive that

25    hearing; is that correct?

1          THE DEFENDANT:  Yes, Your Honor.  It is.

2          THE COURT:  All right.  And he has given me -- and

3    I'm sorry I'm looking at a -- you're not seeing my full face

4    because I'm looking at another computer screen which has the

5    documents on them.

6          THE DEFENDANT:  It's okay.

7          THE COURT:  I'm not being rude in any way.  He has

8    given me a signed waiver form that he signed, but there is no

9    signature for you in that form and it says that you wish to

10   waive your identity hearing.

11         THE DEFENDANT:  Yes, Your Honor.

12         THE COURT:  Do you have any objection to me signing

13   that form for you?

14         THE DEFENDANT:  No.  I do not.

15         THE COURT:  Okay.  I will sign that form for him.

16   We'll make it part of the record.

17         What is the Government's position with respect to

18   bail?

19         MR. WEINTRAUB:  The Government opposes bail on the

20   grounds that there is no package in the Government's view that

21   can reasonably assure the Defendant's appearance in court.  I

22   can elaborate.

23         THE COURT:  Yeah.  Why?  I mean it's --

24         MR. WEINTRAUB:  No.  Sure.  Sure, Your Honor.  I

25   understand why it might at first blush seem a surprising

1  position, but it's really a combination of the nature of the

2  charged offense as well as conduct by the Defendant since the

3  date of his indictment.

4  Starting with the latter, Mr. Ocasio was indicted on

5  May 20th and an arrest warrant issued on that date.  By no

6  later than May 25th, Mr. Ocasio was aware of that arrest

7  warrant.  And the special agent on the phone today from the FBI

8  called him and asked him or advised him that there was an

9  arrest warrant and advised him that he needed to surrender.

10 Mr. Ocasio said that he would surrender the following day.  Mr.

11 Ocasio did not surrender the following day.

12 On June 7th, about a week and a half later, Special

13 Agent Buckner called Mr. Ocasio again and asked if he was

14 planning to surrender.  Mr. Ocasio said that there had been a

15 death in the family and that he was arranging his affairs.

16 I've confirmed that there was a death in the family.  I'm

17 certainly not minimizing the toll that that takes on Mr.

18 Ocasio.  However, that was on Jun 7th and it's now August 4th

19 and he did not self-report in that nearly two-month period and

20 made no indication that he would.

21 Further, on June 16th, the FBI, on a unknown to Mr.

22 Ocasio, contacted him and asked if they could purchase two

23 temporary license plates, two temporary Texas license plates,

24 which is the exact nature of the crime for which he has been

25 indicted.  Mr. Ocasio responded positively, gave them

1    instructions about what information he needed in order to

2    facilitate their obtaining those temporary license plate, and

3    gave them information about how they could pay him.  In short,

4    he continued to commit the crime for which he is indicted after

5    he has been indicted as recently as mid-June.

6            Yesterday after he was arrested by the FBI and NYPD

7    officers, he told them that apart from his conversation with

8    the FBI on separate incidences he has continued to engage in

9    the scheme for which he is indicted.  He's completely

10   undeterred by the indictment in committing the criminal conduct

11   that is the basis for the indictment.

12           Secondly and relatedly, the nature of the crime is

13   not -- it's not an unrelated wire fraud that has nothing to do

14   with whether or not he's going to appear in court.  The nature

15   of the crime is Mr. Ocasio facilitates people obtaining

16   temporary license plates under false pretenses and with

17   potentially false names.  He has stated to law enforcement that

18   he has still to this day a number of connections in Texas with

19   whom he has worked in the past to obtain these temporary

20   license plates.

21           And what that means functionally is he could obtain a

22   temporary license plate from Texas in somebody else's name that

23   would appear completely legitimate.  He could put it on a car

24   and he could drive anywhere.  And if law enforcement were to

25   pull him over and put that license plate into their system, it

1    would not hit back on Octavian Ocasio, fugitive.  It could hit

2    back on any other name that he wanted.

3              And so I think that you take the nature of the crime

4    and his recent conduct since being made aware of the indictment

5    and the arrest warrant into account.  And I think that there

6    really is significant risk that he will not appear in court.

7    And I don't think that -- I think that that's significant and I

8    don't think that the bail package posed by the defense counsel

9    or contemplated by pre-trial services would sufficiently

10   mitigate that risk.

11             THE COURT:  Mr. Sundaram.  You're muted.

12             MR. SUNDARAM:  Sorry.  The Government has presented

13   some reasons why I think that its application for detention is,

14   you know, maybe not as surprising as it would seem.  But

15   looking at the pre-trial services recommendation of release on

16   a substantial bond cosigned by my client's brother with the

17   usual travel restrictions and also a home curfew with location

18   monitoring, I think first I would say that remains a strong

19   enough condition to satisfy the bail statute requirements which

20   are simply that there are conditions that have been put into

21   place that would reasonably assure his return to court.

22             And I think that what the Government is really

23   focusing here is flight.  I know that they're alleging that he

24   continued of the charged criminal activity, or at least some of

25   it, after the time of the indictment.  The first time Mr.

1  Ocasio actually saw the indictment and really knew what the

2  charges were was today when I read it to him and I discussed it

3  with him.  Notably, even if Mr. Ocasio was not as responsive as

4  he should have been, and it appears he had a -- what the

5  Government has verified was a valid and truthful reason back in

6  June was just, you know, not that long ago.

7          Since that time and during the entire time since May

8  and since the indictment, Mr. Ocasio has continued to reside at

9  his residence at 233 Rockaway, I think Rockaway Boulevard, with

10  his sister.  And this is a place where he's lived for 30 years.

11  It's the family house.  It's owned by one of his brothers.  So

12  you know, the Government has not made any real case for a risk

13  or a likelihood of flight given the fact that Mr. Ocasio has

14  remained in his residence.  And it appears from the removal

15  complaint that the Government had all of that information and

16  that's how they -- and they arrested him in the town where he

17  lives when he was out at a restaurant.  They could have

18  arrested him at his home.  They knew where that was, so there's

19  no risk of flight here.

20          And furthermore, I think the Court has the names, but

21  we have an additional surety.  Mr. Ocasio gave pre-trial the

22  information relating to his brother because he knew his phone

23  number by heart, but his brother in turn put us in touch with

24  another surety that Mr. Ocasio had mentioned as a possible

25  surety to me.  And that's his cousin who makes $80,000 a year.

1    The brother makes $73,000 a year.  They're both very strong

2    sureties with very strong relationships to Mr. Ocasio.  Both of

3    them are willing to sign the bond.

4              And, you know, I think that having the case actually

5    presented in terms of having the indictment, having seen the

6    indictment, and having a court date that will be set presumably

7    pretty soon in the Southern District of Texas, all we're asking

8    for at this point is that Mr. Ocasio be given an opportunity to

9    appear on that case.  From that point on, obviously the

10   Southern District of Texas can decide whether there are any --

11   whether those conditions or further conditions are required to

12   assure his appearance in court.  But I think it would carry a

13   lot of weight if he were given the chance to show that he would

14   appear in court, whether it's in person or remotely.

15             And for the Court's information, I looked at the

16   docket sheet in the Southern District of Texas and it shows

17   that Ms. Lopez (ph.) was the, I think -- appears to be, if

18   there was a ringleader in this scheme, this alleged scheme, she

19   appears to be that person more so than Mr. Ocasio.  She was

20   released and she remains on release on an unsecured $100,000

21   bond.  This Defendant is not a U.S. citizen, has no lawful

22   status in the U.S.  And also according to the Government's

23   filings in that case, she has a hybrid passport at home and a

24   car parked in the garage with fraudulent temporary tags.

25             And she, according to the Government in that case,

1    has repeatedly left the U.S. to travel to Honduras illegally

2    and according to the Government in that case was untruthful to

3    pre-trial services and the magistrate judge about her

4    international travel.  And according to them, has collected and

5    moved large amounts of proceeds in the form of cash, some of

6    which she has sent to Honduras, which would be consistent with

7    her apparent role as the ringleader here, the one who's --

8    whereas my client appears to be somebody who's receiving and

9    sending documents by email.  So that defendant is out on bond.

10          And I think if Mr. Ocasio is given the opportunity

11   which he should be under the bail statute of appearing in court

12   on that case, then he -- I expect that he too would be

13   continued on bond.  But I would be very concerned that if he's

14   not even given that chance it's going to prejudice his ability

15   to litigate that case and to be out, which he really should be

16   based on his strong established community ties, two very strong

17   sureties who are close to him, and the fact that we're at this

18   point only asking the court to give him the opportunity to

19   appear in that court.  And from that point on, the bail would

20   be left to that court.

21          And again, that defendant, I would note, has an ankle

22   monitoring GPS condition.  She does not appear to have a curfew

23   or home detention.  And I think that, you know, if the Court

24   were to grant the pre-trial's request for both GPS monitoring

25   and a curfew, that would add an additional measure of assurance

1    that he's going to appear as required in the other district.

2          And Your Honor, I do think it's very important here

3    that he was in -- having been contacted by the authorities, not

4    having a court date or anything like that, he did not make any

5    attempt to evade them in terms of staying somewhere other than

6    his residence.

7          THE COURT:  And Mr. Sundaram, did you provide Lewis

8    with the information for both proposed sureties?

9          MR. SUNDARAM:  I have and they're both -- I believe

10   both of them are on the phone.

11         THE COURT:  Okay.  I would like the sureties to pay

12   attention to what I'm about to say.  This is, in my mind, a

13   close call.  And while I am somewhat concerned about the

14   allegation that Mr. Ocasio engaged in the continued criminal

15   conduct after being informed that he had -- there was a warrant

16   for his arrest for such conduct and there is a history

17   apparently of bench warrants for Mr. Ocasio.  I think that

18   release is nevertheless appropriate.  We will release Mr.

19   Ocasio on $100,000 bond with pre-trial services supervisions

20   subject to random home and workplace visits, and a curfew with

21   location monitoring as directed by pre-trial services.

22         Mr. Ocasio cannot apply for any passports or

23   international travel documents.  His travel will be restricted

24   to New York City, Long Island, and the Southern District of

25   Texas for the purpose of going to court and answering the

1   charges.  He will need to leave the residence as approved by

2   pre-trial and he must appear in court in Texas when required.

3             I'm just trying to pull up the bond here for a

4   second.  It's not working.  There it is.

5             Mr. Reyes, if you can unmute your phone, I'd like to

6   speak with you.

7             MR. REYES:  Yes.

8             THE COURT:  Okay.  Mr. Ocasio is your brother?

9             MR. REYES:  Yes.  He is.

10            THE COURT:  Actually, your answers have to be made

11  under oath.

12                MR. REYES, DEFENDANT'S WITNESS, SWORN

13            THE COURT:  Okay.  Did your brother's lawyer explain

14  to you what it means to sign a bond for someone's release?

15            MR. REYES:  Yes.  He did.

16            THE COURT:  You understand that should your brother

17  be released and he violate the terms of the bond you would owe

18  the Government $100,000?

19            MR. REYES:  Yes.  I understand.

20            THE COURT:  They can garnish your wages, seize any

21  assets that you have to satisfy that amount.

22            MR. REYES:  Okay.

23            THE COURT:  You understand that, right?  Okay.

24            MR. REYES:  Yes.  I do.

25            THE COURT:  All right.  What do you do for a living,

1  sir?

2          MR. REYES:  I work sanitation --

3          THE COURT:  Oh, that's right.  That's right.  I read

4  that in the pre-trial services report.  As well as your -- it

5  had your income in there, so I believe you are an acceptable

6  surety.

7          Last question.  We would ordinarily all be in court

8  together and at the right time you would be asked to physically

9  sign the bond.  Obviously we can't do that because we are all

10 in different locations, so will you permit me to sign the bond

11 on your behalf?

12         MR. REYES:  Yes.  I will.

13         THE COURT:  Okay.  All right.  You can mute your

14 phone now.  Is Mr. Roquemore (ph.) on the line?

15         MR. ROQUEMORE:  I'm here, sir.

16         THE COURT:  Okay.  Same questions I'm going to ask

17 you.

18          MR. ROQUEMORE, DEFENDANT'S WITNESS, SWORN

19         THE COURT:  All right.  You are Mr. Ocasio's cousin?

20         MR. ROQUEMORE:  Yes.

21         THE COURT:  And what do you do for a living?

22         MR. ROQUEMORE:  Therapy -- therapist.

23         THE COURT:  Approximately how much do you make in a

24 year?

25         MR. ROQUEMORE:  80.  80,000.

1     THE COURT:  Okay.  And it was explained to you what

2  it means to sign a bond, yes?

3     MR. ROQUEMORE:  Yes.

4     THE COURT:  So you understand that should you sign

5  this bond and your cousin violate the terms of his release you

6  could owe the Government $100,000?

7     MR. ROQUEMORE:  Yes.

8     THE COURT:  All right.  Will you give me permission

9  to sign the bond for you?

10    MR. ROQUEMORE:  Yes.

11    THE COURT:  All right.  Thank you.  You can mute your

12  phone.

13    Mr. Ocasio, I read the terms of your release into the

14  record a moment ago.  And do you understand them?

15    THE DEFENDANT:  Yes, Your Honor.  And just for the

16  record --

17    THE COURT:  Go ahead.

18    THE DEFENDANT:  I'm sorry to interrupt.  I never

19  intended to mislead the officers.  I do understand --

20    THE COURT:  Don't say -- I strongly urge you not to

21  say anything about that.

22    THE DEFENDANT:  Yes, Your Honor.

23    THE COURT:  And just understand that in this

24  proceeding no one's making any findings of guilt or that you

25  did do something or you didn't do something.  This is all about

1   informing you of the charges and determining whether you should

2   be released, and I have already made that determination.  So

3   you understand the terms of your release.  You're actually

4   going to get a copy of the bond, so you'll see exactly what it

5   is.

6            THE DEFENDANT:  Yes.

7            THE COURT:  -- and what they are.  But you need to

8   know that if you violate the terms of your release you can and

9   likely will be detained and taken into custody to the Southern

10  District of Texas to answer these charges.  And your brother

11  and your cousin would owe the Government $100,000 in what we

12  call joint and several liability.  It means they can go after

13  your brother alone or they could go after your cousin alone or

14  both of them together to satisfy the 100,000.  So they're

15  staking their checks on you and you need to comply with your

16  release terms.

17           THE DEFENDANT:  Yes, Your Honor.

18           THE COURT:  In addition, there are three things that

19  you should know about the bond: 1) if you commit any crimes

20  once you're released, that's a violation of the bond, so you

21  could be detained on these charges plus face charges for any

22  crimes that you commit.  If you fail to go to court when you're

23  supposed to, that's a violation of your bond.  So you could be

24  detained plus face a charge of bail jumping.

25           THE DEFENDANT:  Yes, Your Honor.

1       THE COURT:  And if convicted of these underlying

2   charges that you already face and bail jumping, your sentences

3   could be served consecutively.  That's one after the other.

4   And if you attempt to influence the testimony of any witness

5   that may appear against you, that's a violation of your bond

6   and it would also subject you to a charge of witness tampering.

7   And if you're convicted of the underlying charges and witness

8   tampering, your sentences could be served consecutively.  Do

9   you understand that?

10      THE DEFENDANT:  Yes, Your Honor.

11      THE COURT:  Will you give me permission to sign the

12  bond for you?

13      THE DEFENDANT:  Yes, Your Honor.

14      THE COURT:  Okay.  All right.  Last thing I believe

15  is Mr. Weintraub, pursuant to Federal Rule of Criminal

16  Procedure 5(f), I remind the prosecution of its obligation

17  under Brady v. Maryland and its progeny to disclose to the

18  defense all information known to the prosecution whether

19  admissible or not that is favorable to the Defendant and

20  material either to guilt or to punishment.  The prosecution

21  must make good faith efforts to disclose such information to

22  the defense as soon as reasonably possible.  I'll be entering a

23  written order more fully describing this obligation and the

24  possible consequence of failing to meet it and I direct the

25  prosecution to review and comply with that order.

1          Does the prosecution confirm that it understands its

2    obligations and will fulfill them?

3          MR. WEINTRAUB:  Yes, Your Honor.

4          THE COURT:  Okay.  Great.

5          MR. WEINTRAUB:  And if I may before we leave, I've

6    spoken to the United States DA in the Southern District of

7    Texas and they do want to appeal Your Honor's determination

8    today, so if I may request issue a stay of the order so that

9    they can appeal it through the Southern District of Texas.

10         MR. SUNDARAM:  Your Honor, I'm opposing that request.

11   The Court obviously has discretion to do that or to simply let

12   the appeals process play out and they can request a stay from

13   the other district.

14         THE COURT:  At 5:47 Texas time, unlikely.  Let me ask

15   you this, Mr. Weintraub.  Is what Mr. Sundaram told me about

16   the other defendant, Ms. Lopez, and her being released on bond

17   correct?

18         MR. WEINTRAUB:  Your Honor, candidly, I have to say

19   that I am not sure.  I have no reason to doubt Mr. Sundaram's

20   reading of the docket.  I just am not familiar with Ms. Lopez

21   or Ms. -- I believe it was Ms. Lopez's circumstances.  So just

22   to be candid, I don't know.

23         THE COURT:  Okay.

24         MR. SUNDARAM:  I think I have the docket number if

25   you wanted to check, but I could also put the documents I've

1    printed up on the screen if that helps.

2              THE COURT:  And she remains on bond?

3              MR. SUNDARAM:  She is currently on bond.

4              THE COURT:  And she was released at arraignment?

5              MR. SUNDARAM:  She was released.  It looks like she

6    was released and then her -- there was a motion for a stay.

7    That motion was briefly granted and then it was lifted and the

8    order of release was kept in effect.  And so it looks like,

9    according to the docket sheet, she was -- so there was an order

10   of temporary detention on May 26th.  And the Government in that

11   case -- so there was an order that granted a stay on May 28th,

12   so it looked like she was out for a couple of days.  And then

13   there was an order granting the stay and then there was an

14   order lifting the stay on the same date, May 28th.  So it

15   appears from these papers that she was actually never really

16   detained.

17             THE COURT:  Okay.  I will stay my decision to permit

18   the Southern District of Texas to appeal it.  You're going to

19   need, Mr. Weintraub, to 475 Mr. Ocasio back to court tomorrow

20   on the off chance that that appeal is not successful, in which

21   case he will be released and we will send him -- we will give

22   him the signed bond at that point.  So they have a day.

23             So why don't we do then -- Lewis, send me a temporary

24   order of detention and we'll put in the date, tomorrow's date,

25   that he has to be produced.

1          THE CLERK:  I'm putting it together, Judge.  Will do.

2          THE COURT:  All right.  And in the interim, I'll send

3     you a copy of the signed bond so if the appeal is not

4     successful tomorrow, all you need to do is once the marshals

5     bring him to bring him back, just give them the bond and they

6     can release him and he'll go to pre-trial.  Won't even have to

7     have a proceeding.

8          THE CLERK:  Okay.

9          THE COURT:  All right.  Is there anything else?

10         MR. WEINTRAUB:  Not from the Government, Your Honor.

11    Thank you.

12         MR. SUNDARAM:  I would just request that if the

13    Government is able to get the transcript of today's proceeding,

14    which I would think they would do for their motion, that they

15    would share a copy in case we need to respond to anything.

16         THE COURT:  Why don't you do that, Mr. Weintraub?

17         MR. WEINTRAUB:  Yeah.  Sure.  No problem.

18         THE COURT:  Okay.  Thank you, everyone.

19         MR. SUNDARAM:  Thank you.

20       (Proceedings concluded)

21

22

23

24

25

TRANSCRIBER'S CERTIFICATE

I certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above entitled matter.

_____

Crystal Thomas, CET

August 5, 2021